UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERKSHIRE PLACE ASSOCIATES,  )
LP, and BERKSHIRE PLACE, LTD, )
 Plaintiffs, )
)
v. )
) C.A. No. 1:19-cv-00432-MSM-LDA
MDG REAL ESTATE GLOBAL )
LIMITED, MDG REAL ESTATE )
GLOBAL, LLC, and RIVERSIDE )
ABSTRACT LLC, )
 Defendants. )

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

By way of background, the plaintiffs, Berkshire Place Associates, LP and Berkshire Place, Lt. ("Berkshire") own and operate a nursing home in Rhode Island, which defendants, MDG Real Estate Global Limited and MDG Real Estate Global, LLC ("MDG"), sought to purchase in 2018. The parties entered into an Asset Purchase and Sale Agreement ("Agreement") and, later, after agreeing to several contractual changes, executed the First Amendment to Asset Purchase and Sale Agreement ("Amended Agreement") which set out the requirements for terminating the contract.[1] (ECF No. 9 at 2.) The Agreement contained a binding arbitration

---

[1] The parties executed the Amended Agreement in March 2018 after MDG attempted to terminate the contract. (ECF No. 2 at 11.) The Amended Agreement, in relevant part, provides:

clause to address disputes arising between the parties. *Id.* As part of the Agreement, MDG made a $1,400,000 deposit of the $28,000,000 purchase price, which amount was and is held in escrow by Riverside Abstract, LLC, the third defendant in this case.

---

6. Paragraph 3 (a) (ii) of the Agreement is hereby deleted and replaced with the following: (ii) If Buyer, in its due diligence inquiry, determines that there are any facts or circumstances which could cause Buyer to decide that ft is no longer interested in concluding the transaction Contemplated hereby ("Objections"), Buyer shall notify Sellers in writing of the Objections on or prior to the Due Diligence Deadline. The parties agree to meet in person or via teleconference on or before the Due Diligence Deadline to discuss the Objections. If the Objections cannot be resolved by Buyer and Sellers to Buyer's satisfaction on or before the Due Diligence Deadline, in its sole discretion, Buyer shall choose by notifying Sellers of such action in writing not later than 5:00 p.m. Boston time on the Due Diligence Deadline either (A) to cancel the transaction and terminate this Agreement, or (B), to proceed with the Agreement and accept such any Unresolved Objections without a reduction in the Purchase Price. In the event that Buyer shall terminate this Agreement pursuant to this subsection 3(a)(ii), the entire Deposit shall be forthwith returned to Buyer, this Agreement shall be null and void, and none of the parties hereto will have any further obligation to each other except with their obligations under Sections 7(b), 7(j), 16, and 19(i) and their indemnification with respect thereto. If Buyer does not terminate this Agreement pursuant to the immediately previous sentence on or before 5:00 p.m. Boston time on the Due Diligence Deadline, Buyer shall be deemed to have chosen to proceed with the Agreement and accept such any unresolved Objections without a reduction in the Purchase Price.

(ECF No. 15-4 at 3.)

2

While the finer details need not be repeated, MDG eventually terminated the Agreement during the due diligence period and Berkshire brought an arbitration demand to determine whether the $1,400,000 held in escrow would be retained by Berkshire or returned to MDG. The arbitrators concluded that Berkshire should retain the deposit amount having found MDG failed to comply with the termination process requirements. (ECF No. 16 at 1-2.) The arbitration procedure consisted of discovery, depositions, briefing by the parties, and a three-day evidentiary hearing. *Id.* In its arbitration award ("Award"), the arbitration panel explained that "[f]or MDG to obtain a refund of the deposit, there must have been either a Due Diligence Termination or Seller's Breach Termination." If the elements of those terminations were absent, then "there was not a Refundable Event and Berkshire is entitled to the Deposit…." (ECF No. 15-2 at 12.) The panel evaluated the process for Due Diligence Termination and found that MDG had not conformed to the contract's terms. *Id.*

Following the arbitration, Berkshire brought a complaint in Rhode Island Superior Court to enforce the arbitration award ("Award"). MDG removed the case and Berkshire filed a Motion to Confirm Arbitration Award. (ECF No. 9.) Following a stay in this case during the pendency of a related suit in the Eastern District of New York, MDG filed a Cross-Motion to Vacate the Arbitration Award. (ECF No. 15.)

In its motion, MDG acknowledges that such measures are rarely taken and that, in the great majority of cases, arbitration awards are confirmed. Still, MDG urges that, in this case, the arbitration panel's decision and award fall squarely within the slim minority. Having undertaken a careful review of the Award, the

3

Agreement, the Amended Agreement, the parties' arguments, and the applicable law, the Court hereby DENIES the Motion to Vacate and GRANTS the Motion to Confirm.

"Rhode Island has a strong public policy in favor of the finality of arbitration awards." *Berkshire Wilton Partners, LLC v. Bilray Demolition Co.*, 91 A.2d 830, 835 (R.I. 2014) (citing *N. Providence Sch. Comm. v. N. Providence Fed'n of Teachers, Local 920, Am. Fed'n of Teachers*, 945 A.2d 339, 344 (R.I. 2008)). Applying Rhode Island law, this Court may vacate an arbitration only under very specific and limited circumstances. This highly deferential standard "requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Nappa Const. Mgmt., LLC v. Flynn*, 152 A.3d 1128, 1132 (R.I. 2017) (quoting *Purvis Sys., Inc. v Am. Sys., Corp.*, 788 A.2d 1112, 1115 (R.I. 2005)). Vacatur, as MDG has requested, is appropriate only "'[w]here the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* (quoting *State Dep't of Corr. v. Bhd. of Corr. Officers*, 867 A.2d 823, 828 n.2 (R.I. 2005); R.I.G.L. 1956 § 28-9-18)) (alteration in original). Put more specifically, "[w]hen an arbitrator ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed, the arbitrator has exceeded his authority and the award will be set aside." *State v. R.I. Emp't Sec. All., Local 401, SEIU, AFL-CIO*, 840 A.2d 1093, 1096 (R.I. 2003) (citing *R.I. Council 94, AFSCME, AFL-CIO v. State*, 714 A.2d 584, 594 (R.I. 1998)).

4

Arbitrators are vested with "the power and the authority to interpret [a] contract . . ." but "they [do] not have the power and authority to rewrite it." *Buttie v. Norfolk & Dedham Mut. Fire Ins. Co.*, 995 A.2d 546, 549 (R.I. 2010) (quoting *Town of Coventry v. Turco*, 574 A.2d 143, 147 (R.I. 1990)) (alterations in original). This Court must determine whether the arbitration panel in this case effectively rewrote the contract between MDG and Berkshire to the extent that the arbitration award should be vacated. *Id.* at 550 (citing *Turco*, 574 A.2d at 147). "Absent a manifest disregard of a contractual provision or a completely irrational result, [an arbitration] award will be upheld." *Turco*, 574 A.2d at 146.

In this case, the arbitrators concluded that MDG terminated the Agreement, but that MDG's termination did not fully comply with the contract terms.

In its Cross-Motion to Vacate, MDG divides its argument into four parts and submits: (i) that the award must be vacated, (ii) that MDG made the required objections, (iii) that the arbitration award improperly rewrote the Agreement, and (iv) that the award is arbitrary and capricious. These discrete headings essentially make one singular argument–that MDG complied with the contractual termination process and that the arbitration panel ignored the Agreement's plain language. (ECF No. 15-1.) In its Cross-Motion, MDG references the following clause from the Amended Agreement:

> If the Objections cannot be resolved by Buyer and Sellers to Buyer's satisfaction on or before the Due Diligence Deadline, in its sole discretion, Buyer shall choose by notifying Sellers of such action in writing not later than 5:00 p.m. Boston time on the Due Diligence Deadline either (A) to cancel the transaction and terminate this

5

> Agreement, or (B), to proceed with the Agreement and accept such any Unresolved Objections without a reduction in the Purchase Price.

(ECF No. 15-1 at 4, 7, 13, 14.) More specifically, MDG repeatedly emphasizes that it was within "its sole discretion" to terminate the Agreement. That argument is founded upon a carefully tailored excerpt from the Amended Agreement and critically ignores the preceding language.

> If Buyer, in its due diligence inquiry, determines that there are any facts or circumstances which could cause Buyer to decide that ft is no longer interested in concluding the transaction Contemplated hereby ("Objections"), *Buyer shall notify Sellers in writing of the Objections on or prior to the Due Diligence Deadline. The parties agree to meet in person or via teleconference on or before the Due Diligence Deadline to, discuss the Objections.* If the Objections cannot be resolved by Buyer and Sellers to Buyer's satisfaction on or before the Due Diligence Deadline, in its sole discretion, Buyer shall choose by notifying Sellers of such action in writing not later than 5:00 p.m. Boston time on the Due Diligence Deadline either (A) to cancel the transaction and terminate this Agreement, or (B), to proceed with the Agreement and accept such any Unresolved Objections without a reduction in the Purchase Price.

*Id.* at 3 (emphasis added).

As MDG requested, the Court has undertaken a close examination of the Award and the contract terms. The Award details the contractual relationship between the parties, the events leading to the parties' execution of the Amended Agreement, and the panel's reasoning for finding that MDG failed to properly terminate the Agreement. In pertinent part, the Award interprets the termination clause agreed to by the parties.

6

> Thus, both the original Agreement and the Amendment provide that any termination during the Due Diligence Period must be preceded by written notice of objections, and followed by an in person or telephonic discussion between the parties concerning those objections. Neither the Agreement nor the Amendment permits the meeting "to discuss" such objections to take place via email or with anyone other than the Sellers (as defined).

(ECF No. 15-2 at 9.)  The panel then evaluated the communications which MDG contended had qualified as "written objections." *Id.* at 11.  The panel explained that the emails and other communications, which referenced various topics (some of which prompted the panel to question MDG's identification of those topics as "objections" at all as defined in the Agreement), did not afford an opportunity for the parties to discuss "in person or telephonic[ally]," and were not necessarily directed to the sellers or their authorized representatives.  *Id.* at 11-12, 13 at n.2.

The panel deemed "[t]he termination provision, as amended, unambiguous." *Id.* at 13.  "It requires MDG: (i) to notify Berkshire in writing of objections, and (ii) to meet in person or via teleconference on or before the Due Diligence Deadline to discuss the objections." *Id.*  The panel found that MDG had done neither. *Id.*[2]

---

[2] The panel was also unconvinced by MDG's Seller's Breach Termination argument that MDG could not comply with the termination protocols due to Berkshire's material breach of the Agreement.  Specifically, MDG suggested that financial recordkeeping issues and a small land purchase constituted material breaches of the Agreement by Berkshire. (ECF No. 15-2 at 14.)  The Award addressed each alleged breach in turn and found that Berkshire's financial reporting system had been adequately explained and disclosed to MDG and that the land purchase had, if anything, increased rather than diminished the Property's value and was not prohibited by the Agreement.  *Id.*

7

The Court finds the Award reflects an appropriate execution of arbitrator obligations. The plain language of the requirements for terminating the contract set out in the Amended Agreement supports the panel's contract interpretation. The Court further finds that the panel has not "rewritten" the contract between the parties, nor has the panel "manifestly disregarded" the contract. Quite the opposite, the Award diligently evaluated the contractual language and parties' performance, and the Court is satisfied that the panel appropriately exercised its power and authority. The Motion to Confirm the Arbitration Award (ECF No. 9) is GRANTED and the Cross Motion to Vacate the Arbitration Award (ECF No. 15) is DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

September 8, 2021